IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARTIK BROTHERS, INC.,
        Plaintiff,

v.

HUNTINGTON NATIONAL BANK,
        Defendant.

_____

HUNTINGTON NATIONAL BANK,
        Third Party Plaintiff,

v.

KIEBLER SLIPPERY ROCK, L.L.C.,
        Third Party Defendant.

08cv0083
**Electronically Filed**

**MEMORANDUM OPINION GRANTING
MOTION FOR SUMMARY JUDGMENT (DOC. NO. 39)**

**I.    Introduction.**

Plaintiff Martik Brothers, Inc. ("Martik"), a Pennsylvania corporation, filed its Complaint in this case against Defendant Huntington National Bank ("HNB"), a national banking corporation with its principal place of business in Ohio, setting forth common law claims sounding in contract and tort. Count I alleges that Martik is a third party beneficiary under a construction loan agreement entered into between HNB and Kiebler Slippery Rock, L.L.C., and that, under the terms of the loan agreement, Martik is owed money for services it performed for Kiebler; Count II, that HNB made certain misrepresentations to Martik regarding the funding available in the loan agreement and payment for Martik's services under its contract with Kiebler; Count III, that Martik detrimentally relied on HNB's misrepresentations; and Count IV,

that HNB has been unjustly enriched.[1] More specifically, the Complaint avers the following facts in support of Martik's several theories.

Martik avers that on or about August 29, 2006, it entered into two separate contracts with Kiebler whereby it agreed to provide general contracting services to Kiebler, the owner or developer of a project known as the "Slippery Rock Quadrangle" located in Slippery Rock Township, Butler County, Pennsylvania which consist of (a) a contract for site work related to the construction of nineteen (19) buildings and a clubhouse and (b) a contract for the construction of fourteen (14) buildings. Complaint, ¶¶ 5,6. According to the Complaint, Kiebler obtained funding for the Slippery Rock Quadrangle through HNB pursuant to the terms of a construction loan agreement (the "Loan Agreement"). Martik was not and does not claim to have been a party to the Loan Agreement or in privity with the parties to the Loan Agreement.

On or about October 18, 2006, Martik and Kiebler entered into a No Lien Agreement relating to the work performed for the Slippery Rock Quadrangle, which Martik avers was required by HNB in order for Kiebler to obtain financing under the Loan Agreement. Complaint, ¶¶ 8,9. Martik further asserts that the terms of the Loan Agreement required the proceeds to be used for the specific purpose of paying the contractors, subcontractors and materialmen for the Slippery Rock Quadrangle project, required the amount of each advance to be determined by the actual cost of labor and materials expended, and required Kiebler to produce a release of any liens which would indicate to the Bank that payment had been made for all labor and materials. Complaint, ¶¶ 10-12.

---

[1] This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000.00 exclusive of interest and costs and is between citizens of different states.

Martik claims that during the course of the performance of the contracts, it contacted HNB in order to confirm that it had sufficient funds to pay Martik for its performance, that HNB expressly represented to Martik that there were sufficient funds to pay Martik for its work at the Slippery Rock Quadrangle, and that HNB "encouraged" Martik to continue its work despite knowing that Kiebler had failed to pay the invoices in full. Complaint, ¶¶ 13-14. "While representing to Martik . . . that there were sufficient loan proceeds to pay . . . for its work on the Project," Martik asserts, HNB "knowingly and intentionally disbursed loan proceeds to Kiebler based on disbursement requisitions for work that had not been completed. In addition, after disbursing such proceeds to Kiebler, [HNB] made further disbursements to Kiebler despite [HNB's] previous knowledge that Kiebler had not paid the contractors the amounts disbursed in prior requisitions. . . ." and that by "disbursing loan proceeds to Kiebler despite [HNB's] knowledge that Kiebler was not using those loan proceeds to pay the contractors, including Martik . . ., [HNB] intentionally and/or recklessly depleted the loan proceeds available to pay Martik . . . for its work on the project." Complaint, ¶¶ 15-16.

Martik states that it completed the scope of all work called for under both contracts in a workmanlike and timely manner and is entitled to full payment for same, that it invoiced Kiebler over $14 million for its work on the project, but that, with HNB's knowledge, Kiebler only made partial payments and still owes Martik a balance of over $2 million which remains unpaid despite repeated demands. Complaint, ¶¶ 18-22. This lawsuit attempts to collect the unpaid invoices from HNB under a third party beneficiary contract theory or, in the alternative, because of HNB's alleged misrepresentations or unjust enrichment, or Martik's detrimental reliance.

On May 5, 2008, HNB filed a third party complaint (doc. no. 19) against Kiebler seeking

indemnification from Kiebler, in the event Martik prevails on its claims.

Subsequent to filing the Complaint, on November 7, 2008 Martik won an American Arbitration Association award against Kiebler in the amount of $2,687,781.38 plus interest and penalty in the amount of $1,103.56 per day, commencing on October 20, 2008 and $26,907.07 in AAA fees and expenses, according to papers filed in the summary judgment briefing in this case, and in a related case filed in this Court at Civil Action No. 08-1756, *Martik Brothers, Inc. v. Kiebler Slippery Rock, LLC*. The related case commenced in the Court of Common Pleas of Washington County, Pennsylvania with a Petition for Confirmation of Arbitration Award under the Pennsylvania Arbitration Act, 42 Pa.C.S. §7342(b), but was removed to this Court by Kiebler pursuant to 28 U.S.C. § 1441 and the Federal Arbitration Act, 9 U.S.C. § 1 et seq.[2]

**II.    Motions for Summary Judgment.**

HNB has filed motions for summary judgment against plaintiff Martik (doc. no. 39) and as third party plaintiff against third party defendant Kiebler (doc. no. 42). With regard to the motion for summary judgment against Martik, HNB maintains that it has fulfilled all of its obligations to Kiebler under the Loan Agreement, paid out all of the proceeds to Kiebler pursuant to the terms of the Loan Agreement, and has no obligation to pay Martik under the Loan Agreement or any other agreement. Further, HNB asserts that the record does not support an inference that it committed any acts that would create a duty to pay Martik or otherwise entitle Martik to recover from HNB. Therefore, HNB contends, this Court should grant its motion for summary judgment and dismiss the claims against HNB as a matter of law. Martik disputes

---

[2] Kiebler did not initially file the Notice of Removal as a related case, but United States Magistrate Judge Amy Reynolds Hay granted Martik's Motion to Reassign Case to Judge Arthur J. Schwab (doc. no. 8) on January 13, 2008 as it is clearly related to the instant case.

HNB's legal arguments, offers evidence to support its claims, and argues that there are genuine disputes of material fact that should proceed to the fact finder. After careful consideration of HNB's motion for summary judgment, Martik's response, the respective briefs and concise statements of material facts and the supporting documentation, the Court agrees with HNB that there is insufficient record evidence offered as to essential elements of each of Martik's claims, and that summary judgment in its favor is appropriate.

As to third party plaintiff HNB's motion for summary judgment against third party defendant Kiebler on its claim for indemnification, Kiebler did not file a response to the motion for summary judgment. Given the Court's ruling on the motion for summary judgment against Martik, HNB is not liable to Martik and the third party complaint and the motion for summary judgment against Kiebler are rendered moot. However, on January 13, 2009, Kiebler and HNB filed a joint stipulation (doc. no. 56) indicating that this Court should enter judgment in favor of HNB against Kiebler, and the Court will enter judgment by consent via the attached proposed Order of Court, pursuant to said stipulation.

### III. Summary Judgment Standards.

Fed.R.Civ.P. 56(c) now provides that on a motion for summary judgment, the "judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56 of the Federal Rules of Civil Procedure 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"

5

*Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. Sch. Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), quoting *Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted).

An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof."), citing *Anderson* and *Celotex Corp.* Recently, the United States Supreme Court "emphasized, [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372 (2007) (internal quotations omitted), quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. *Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001); *Woodside*, 248 F.3d at 130; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). Further, the court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers,*

6

*Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998), quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

IV.     **Legal Analysis of Claims.**

The parties agree that the third party beneficiary contract claim must be considered in light of Ohio law, as the Loan Agreement provides, and that the remaining claims are governed by the common law of Pennsylvania as the project and Martik's performance under its contracts with Kiebler and HNB's conduct of which plaintiff complains all took place in Pennsylvania. The Court agrees with the parties, and will consider the third party beneficiary contract claims in light of Ohio law, and the remaining claims under the Pennsylvania common law.

A.      **Third party beneficiary contract.**

Recently, the Ohio Court of Appeals summarized the following general principles regarding the law of third party beneficiary contracts:

> Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio. *Thornton v. Windsor House, Inc.* (1991), 57 Ohio St.3d 158, 566 N.E.2d 1220; *Visintine & Co. v. New York, Chicago, & St. Louis RR. Co.* (1959), 169 Ohio St. 505, 9 O.O.2d 4, 160 N.E.2d 311. A third-party beneficiary is one for whose benefit a promise has been made in a contract but who is not a party to the contract. *Chitlik v. Allstate Ins. Co.* (1973), 34 Ohio App.2d 193, 196, 63 O.O.2d 364, 299 N.E.2d 295. "The third party need not be named in the contract, as long as he is contemplated by the parties to the contract and sufficiently identified." *Id*. Moreover, the "promisee must intend that a third party benefit from the contract in order for that third party to have enforceable rights under the contract." *Laverick v. Children's Hosp. Med. Ctr. of Akron* (1988), 43 Ohio App.3d 201, 204, 540 N.E.2d 305.

*Perrysburg v. Toledo Edison Co.*, 171 Ohio App.3d 174, 181, 870 N.E.2d 189 (Ohio App. 6 Dist. 2007).

An intended beneficiary is one who has enforceable rights under the contract, in

contrast to an incidental beneficiary who has no rights of enforcement. *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40, 521 N.E.2d 780 (1988) (adopting the statement of law with respect to intended and incidental beneficiaries found in Section 302 of the Restatement of the Law 2d, Contracts (1981), at 439-440). To be an intended beneficiary, the contract must be entered into specifically with the intent to benefit that person. *Doe v. Adkins*, 110 Ohio App.3d 427, 436, 674 N.E.2d 731 (1996). If there is no intent to benefit the person, he is an incidental beneficiary with no enforceable rights under the contract. *Laverick*, 43 Ohio App.3d 201, 205. "The mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary." *Hill*, 36 Ohio St.3d at 40, quoting *Norfolk & W. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980).

Moreover, Section 302 of the Restatement provides that one who might otherwise satisfy the definitional elements of an intended third-party beneficiary will not be treated under the law as such when it is "otherwise agreed between promisor and promisee." Where the terms of a contract are clear and unambiguous, a court must not create a new contract by finding an intent not expressed in the clear language employed by the parties to the contract. *Fireman's Fund Ins. v. Mitchell-Peterson, Inc.*, 63 Ohio App.3d 319, 325 (1989). Conversely, unambiguous language in a contract providing that the parties to the agreement did not intend to confer upon anyone the status of a third party beneficiary have been uniformly upheld in Ohio. See *State ex rel. Dellagnese v. Bath-Akron-Fairlawn Joint Economic Dev.*, 2006 WL 3783446 (Ohio App. 9 Dist. 2006) (language in

contract stating that the contract "shall not inure to the benefit of anyone other than as provided in the immediately preceding sentence" specifically establishes that appellant was not an intended third party beneficiary of the contract); *In re Gulf Oil/Cities Service Tender Offer Lit.*, 725 F.Supp. 712, 733 (S.D.N.Y.1989), and cases cited therein.

The Loan Agreement is between Kiebler and HNB and Martik does not claim to be a signatory or party to the Agreement. Only if Martik is an intended beneficiary, therefore, can it mount a legitimate claim as a third party beneficiary under the Loan Agreement. In this regard, the starting and the end point of the analysis is the explicit language of Section 15.3 of the Loan Agreement which provides, in pertinent part:

> Neither Agent nor any of the Banks[3] shall be liable to any Contractor, supplier, laborer, architect, engineer, or any other party for services performed or materials supplied in connection with construction of the Project. Banks shall not be liable for any debts or claims accruing in favor of any such parties against Borrower or against the Project. . . . Neither Agent nor any of the Banks shall be deemed to be in privity of contract with any Contractor or provider of any services on or to the Project, nor shall any payment of funds directly to a Contractor or provider of services be deemed to create any third party beneficiary status or recognition of same by banks unless and until Banks expressly assumes such status in writing. No Contractor, supplier, laborer, architect, engineer, or other party shall be deemed to be a third party beneficiary of this Agreement or any of the Loan Documents. . . .

Loan Agreement, Exhibit B to HNB's Concise Statement of Material Facts (doc. no. 41 at 41-4, page 48 of 71).

A more explicit expression of the parties' intent <u>not</u> to confer third party beneficiary status on any contractor, supplier of services, etc., is hard to imagine, and Martik makes only a half-hearted attempt to convince this Court that, despite the clear and unambiguous language of

---

[3] There were other banks on the Loan Agreement involved in funding this Project.

the Loan Agreement, the parties somehow intended to confer third party beneficiary status on it. See Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (doc. no. 45) at 9-10. Metaphysical doubt about the intent of the parties to the Loan Agreement is not evidence.

The Court holds that under the unambiguous terms of the Loan Agreement and Ohio law as set forth above, Martik is not an intended third party beneficiary, and Martik has offered no actual record evidence that could plausibly counter such explicit language. Summary judgment must therefore be entered in favor of HNB on Martik's contract claim in Count I of the Complaint.

### B. Intentional misrepresentation.

Martik next attempts to support its tort claim of intentional misrepresentation. The elements of intentional misrepresentation are well established, and consist of the following:

(1) A representation;

(2) which is material to the transaction at hand;

(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it;

(5) justifiable reliance on the misrepresentation; and,

(6) the resulting injury was proximately caused by the reliance.

*Bortz v. Noon*, 556 Pa. 489, 499, 729 A.2d 555 (Pa. 1999), citing *Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (1994). The tort of intentional non-disclosure has the same elements as intentional misrepresentation "except in the case of intentional non-disclosure, the party

intentionally conceals a material fact rather than making an affirmative misrepresentation."

*Gibbs*, 538 Pa. at 207.

The misrepresentations of which Martik complains are those of Dick Dexter. As background, Martik offers evidence to show that, arguably, Mr. Dexter and others employed by HNB were aware that the Loan Agreement fund was experiencing significant shortfalls in 2007. Martik summarizes the alleged actionable misrepresentations as follows:

> In June 2007, at the request of Huntington, a meeting was held at the Project with Frank Martik, Dean Martik, representatives from Huntington Bank, including Mr. Dexter, Paul Kiebler and Ed Samaan, of Kiebler. (App. Ex. 3 Frank Martik Dep. I at 34-35.) At the June 2007 meeting, Dean Martik overheard Huntington discussing discrepancies with Kiebler, including payment for $400,000 for appliances which Kiebler did not purchase and a 100% draw for Momentum even though Momentum was only paid 40%. (App. Ex. 5 Dean Martik Dep. at 78, 81.) In addition, Huntington did not review the Loan, schedule of values or budget for the Project with Martik or provide Martik with any documents explaining the shortfall. (App. Ex. 3 Frank Martik Dep. I at 39-40; App. Ex. 5 Dean Martik Dep. at 84.)

> When leaving the June 2007 meeting, Frank Martik asked Mr. Dexter if there would be a problem getting paid. Mr. Dexter said "no." (App. Ex. 5 Dean Martik Dep. at 50.) Mr. Dexter made the comment that "there was funding there. You guys have no problems." The other bank representative with Mr. Dexter did not disagree with the statement. (App. Ex. 4. August 26, 2008 Deposition of Frank Martik ("Frank Martik Dep. II") at 8-9.) Mr. Dexter "put us at ease saying there's not going to be, there were not going to be any money issues as far as getting paid to get the job done." (App. Ex. 5 Dean Martik Dep. at 54.)

> After listening to the comments at the June 2007 meeting and discussions with Dean Martik, Frank Martik called Mr. Dexter the next business day after the June 2007 meeting. Frank Martik "point blank" asked him if there were sufficient funds in the Loan to fully pay Martik for the Contracts including work already completed and work to be completed at the Project. Mr. Dexter, unequivocally stated, "yes, there was." Martik relied upon this information. "If he would have said no, we would have pulled off and cut our losses." (App. Ex. 3 Frank Martik Dep. I at 37-38; 42-43; 44-45; 46-47; 67; 70; App. Ex. 4 Frank Martik Dep. II at 35.) At the time he made these statements, Mr. Dexter had already concluded that there was insufficient money to complete the Project. (App. Ex. 8 Dexter Dep. at

11

> 10.) The Construction Monitoring Report, written by Mr. Dexter in June 2007, which was not shared with Martik, notes a shortfall of $1.077 million dollars. (App. Ex. 6 Butko Dep. at 100; App. Ex. 8 Dexter Dep. 7-8, 10-11; Ex. 1.)

Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (doc. no. 45) at 4-5.

By September, 2007, "Huntington no longer had sufficient funds to pay Martik. Frank Martik called Mr. Dexter again to discuss Huntington's failure to pay Martik's pay applications for September 2007. During that telephone conversation, Mr. Dexter told Frank Martik that there were insufficient funds to cover these draw requests and that he could not really explain it to him." *Id*. at 6.

It is doubtful that Mr. Dexter's rather casual statements themselves or any other evidence adduced by Martik can support an inference that the representations were made falsely, with knowledge of their falsity or recklessness as to whether they were true or false, or that Martik would be justified in relying on such informal and non-specific conversations to assure it that there were sufficient funds to complete the project and pay Martik in full. HNB offers evidence to support its contention that Mr. Dexter reasonably believed that there would be sufficient funding because, as Martik knew, Kiebler was looking for another source of funding, and that his statements were therefore true.

But even if the Court found a genuine issue of material fact on these elements of the common law tort of intentional misrepresentation, Martik's claim must fail in the complete absence of any evidence that might reasonably support an inference that Dexter's statements were made with the intent of misleading Martik into relying on it and induce it to finish a project it otherwise would not have. In lieu of actual evidence of intent, Martik merely speculates that

Dexter and HNB must have intended to mislead and induce Martik's reliance, extrapolating such intent from the fact that they were aware of funding shortfalls before the statements were made. Interestingly, although Martik claims that Frank Martik "would have pulled off and cut our losses" if Dexter's answer had been "no," Martik does not aver that it communicated that to HNB.

This metaphysical speculation about Dexter's and HNB's fraudulent motives falls far short of the record evidence needed to support an inference that Dexter and HNB intended to misled Martik and induce it to expend over $2 million that it would not have otherwise. Because Martik has not offered any evidence, direct or circumstantial, to support this element of its claim of intentional misrepresentation, the Court must grant summary judgment in favor of HNB as to Count II.

### C. Detrimental reliance.

In Pennsylvania, detrimental reliance is also known as promissory estoppel. *Lehigh Valley Hosp. v. County of Montgomery*, 768 A.2d 1197, 1200 (Pa.Cmwlth. 2001); *Thomas v. E.B. Jermyn Lodge No. 2*, 693 A.2d 974, 977 (Pa.Super. 1997). The doctrine of promissory estoppel allows a party to enforce a promise even though that promise is not supported by consideration. *Crouse v. Cyclops Indus.*, 560 Pa. 394, 402, 745 A.2d 606, 610 (2000). The Supreme Court of Pennsylvania has articulated the necessary elements for a claim of promissory estoppel as requiring: (1) the promisor made a promise that he should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise. *Thatcher's Drug Store of West Goshen Inc. v. Consolidated*

*Supermarkets Inc.*, 535 Pa. 469, 476, 636 A.2d 156, 160 (1994); see also *Lehigh Valley Hosp.* and *Thomas*. In effect, the detrimental reliance of the promisee creates the consideration necessary for the formation of a contract, the breach of which is actionable. *Travers v. Cameron County Sch. Dist.*, 544 A.2d 547 (Pa.Cmwlth. 1988).

This claim fails at the outset, for it is impossible to glean a <u>promise</u> from Dick Dexter's simple responses to Frank Martik's relatively casual inquiries indicating that, in his opinion, there would be adequate funding available to complete the project. The conversations were "casual" in the context in which they were made, especially considering that Frank Martik, presumably a sophisticated businessman, claims that Martik performed over $2 million more in services to Kiebler based solely on Dexter's barebones "yes" to his inquiries about the adequacy of funding, even though Martik never told Dexter that its continued work on the project hinged on Dexter's response.

Dexter's responses to Martik cannot be construed as a promise by HNB to pay Martik for its work performed for Kiebler, nor can it be deemed a guarantee or a loan commitment. Indeed, Martik does not even call Dexter's statement "promises," just "representations that there were sufficient funds under the Loan for Huntington to pay Martik for the work under the Contracts." Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (doc. no. 45) at 11, 12.

Moreover, and importantly, in Pennsylvania the bank owes a fiduciary obligation to its clients, and has no duty to third parties inquiring about the balance in the client's accounts. *Heritage Surveyors & Eng., Inc. v. National Penn Bank*, 801 A.2d 1248, 1253 (Pa. Super. 2002) ("Although the appellate courts in Pennsylvania have not previously addressed the issue of

14

whether a bank is under a duty of confidentiality to its customer, it is established in Pennsylvania that the legal relationship between a financial institution and its depositors is based on contract. We find that the duty on a bank and its employees to keep a customer's bank account information confidential, which has long been recognized [by other] jurisdictions, is present as an implied contractual duty under Pennsylvania common law, as well."). Martik was not privy to the Loan Agreement or the amount of funding available to Kiebler under said Loan Agreement, and HNB was not obligated to disclose the balance to Martik, and might have violated Kiebler's confidentiality if it had. Martik might have attempted to get assurances from Kiebler that it had sufficient funding or get Kiebler's authorization to receive from HNB an accounting of the balance remaining in the Loan. Instead, Frank Martik made informal inquiries of Dexter, and Dexter's responses can hardly be deemed a promise by HNB to pay Martik for any work performed pursuant to its contracts with Kiebler.

**D.    Unjust enrichment.**

Unjust enrichment is a synonym for quantum meruit. See *Mitchell v. Moore*, 729 A.2d 1200, 1202 n. 2 (Pa.Super. 1999) ("cause of action in quasi-contract for quantum meruit, a form of restitution, is made out where one person has been unjustly enriched at the expense of another"). The elements of unjust enrichment have been summarized as follows:

> A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched. The elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." The most significant element of the doctrine is

> whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefitted as a result of the actions of the plaintiff. Where unjust enrichment is found, the law implies a quasi-contract which requires the defendant to pay to plaintiff the value of the benefit conferred. In other words, the defendant makes restitution to the plaintiff in quantum meruit.

*Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664, 668-69 (Pa.Super. 2007), citing, inter alia, *Lackner v. Glosser*, 892 A.2d 21, 34 (Pa.Super. 2006).

Martik has not adduced any evidence to support an inference that HNB benefitted from anything Martik has done under its contracts with Kiebler. HNB had a Loan Agreement with Kiebler; Kiebler was obligated to repay the loan with interest. HNB has not received anything of value <u>from Martik</u> which HNB was not already entitled to <u>from Kiebler</u> under the Loan Agreement.

Martik speculates about some possible benefit to HNB, arguing that Martik's "work clearly benefitted Huntington because it permitted the apartments to be leased by students in September 2007, thereby generating income for Kiebler to pay its mortgage to Huntington, and provided Huntington with a completed project to secure its mortgage. Otherwise, if Martik would have walked off the job, Huntington would have been forced to find a new contractor or face default on the Loan." Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (doc. no. 45) at 15. This speculation assumes that HNB could not otherwise have been paid in full under the Loan Agreement, that it had no other security for the Loan, and that Martik was responsible for this presumed "benefit" to HNB.

In any event, the "most significant element of the doctrine is whether the enrichment of the defendant is unjust," and at best, HNB has or will receive exactly what it was entitled to receive under its Loan Agreement with Kiebler. By no stretch of the summary judgment record

16

facts could a reasonable fact finder conclude that HNB has been unjustly enriched by benefits conferred upon it by Martik. Accordingly, summary judgment must be entered in favor of HNB and against Martik on Count IV of the Complaint.

For all of the foregoing reasons, the Court will grant HNB's motion for summary judgment against Martik. An appropriate Order will follow.


s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:   All Registered ECF Counsel and Parties